*Smalley & Adams* for defendant.

---

FRANKLIN,
January,
1834.

## John Nason vs. Freeborn Potter.

Where executors on an estate took a note for the effects to themselves as executors, commenced a suit thereon, were then removed by the Court of Probate, and an executor *de bonis non* was thereupon appointed, who discharged the suit, and took a new note to himself for the amount of the debt, which was paid.

*Held,* that this could not be deemed a valid payment of the first note, unless it appeared that both executors assented to the same being paid to the executor *de bonis non* either before or after said payment.

In such case the presentment by the first executor of his account for allowance to the Court of Probate, claiming the same as a credit, is *prima facie* evidence of his assent that the executor *de bonis non* should receive payment upon the same.

This was an action upon a note dated December 17th, 1814, and payable by the 17th of December, 1819, given by the defendant to the plaintiff and one Curtis and Edmund, as executors of the estate of Daniel Ryan: Both Curtis and Edmund deceased long previous to the commencement of this suit. The cause was tried upon the general issue, in the county court, September Term, 1833, when a verdict was found for the defendant; and the case comes here upon exceptions then taken by the plaintiff to the decisions made by the Judge in delivering his charge to the jury. A further statement of the case will be found in the opinion of the court.

FRANKLIN,
January,
1834.

Nason
vs.
Potter.

*Counsel for plaintiff.*—1. The legal title to the note in question, whatever was its consideration, is in the payees, and the survivor of them. Their naming themselves in the note executors, is a mere description, and has no more effect upon their title than would the styling themselves Esquires, or Justices of the Peace.

If the plaintiff and his companions disposed of the effects of their testator in the due execution of their trust, and received the note therefor, this was administering, and for the value of the estate thus sold they are bound to account. If they received the note on the sale of the property of their testator in violation of their trust, the same consequences would follow. In either case they would become personally liable for the property sold, and consequently would be entitled to all the rights accruing from the contract of sale.

The executor who may dispose of the personal fund as he pleases, has suspended, and therefore annulled the original demand. By doing this, he is made liable for its amount, which has become assets in his hands, the same as if he had formally released it. He cannot be subject to personal liabilities, and yet deprived of the consideration for incurring them. Was a creditor to have judgment for the amount as assets in hand, the estate could not claim the new contract, since that would be claiming a demand twice over, for which reason it belongs to the executor.—Hammond on Parties, 155.

2. The plaintiff insists that there was no evidence in the case tending to establish the fact that Nason ever ordered the defendant to pay the note to Hoyt, and that the court erred in their instructions to the jury in this respect.

*Counsel for defendant.*—In this case, the defendant contends that the note in question, having been given to Curtis Edmund and Nason, as executors of the last will and testament of Daniel Ryan, and not to them in their individual or private capacities, must be taken and deemed to be a part of the estate of said Ryan; and this is acknowledged to be the fact by Edmund, in his letter to Judge Wetmore. If so, the administrator *de bonis non* had a right to receive, control, or discharge the same; and it

would be assets in his hands for the payment of debts and legacies.

Had the executors of Ryan commenced an action on this note as executors, and said action been pending in court at the time the administrator *de bonis non* was appointed, such administrator, could have appeared in court and prosecuted the same, or if such judgment had been obtained, could have brought *scire facias* on the same, even against the will of the former executors, and had execution.—See Probate Act of March, 1797, Sec. 38.

The defendant therefore contends that the discharge of the administrator *de bonis non* is a sufficient defence to this action.

The defendant further contends, that the court did not err in charging the jury that if they found that Nason had, since the discharge given by Hoyt to defendant, acquiesced therein, it would be binding on Nason, and that the evidence permitted to go to the jury was legal evidence on that point.

The opinion of the Court was pronounced by

MATTOCKS, J.—The case, together with the power of attorney referred to, and letter, shows that Nason, the plaintiff, and Edmund, were executors of the estate of Ryan, and as such, recovered judgment against House, and set off land which they deeded to Potter, the plaintiff taking the note in question, with a mortgage to secure it,—that afterwards Potter was sued on the note, by Edmund and Nason, and Edmund gave Julius Hoyt a power of attorney to prosecute the suit to final judgment, or to continue or to discontinue the same as Hoyt in his discretion might think proper; and the letter enclosing the power directs Hoyt to make the best use of it for Ryan's estate, and so as not to prejudice him, Edmund. That pending this suit, Edmund and Nason were removed by the Judge of Probate from being executors of Ryan, and were duly notified thereof; and Julius Hoyt was appointed administrator *de bonis non*. Hoyt then discharged the note and mortgage aforesaid, and took a new note to himself for the amount of the debt, which has since been paid by the defendant to Hoyt, and this suit is

FRANKLIN,
January,
1834.

Nason
vs.
Potter.

brought by Nason on the old note so discharged by Hoyt, but not given up, having remained in the hands of Nason, the defendant.

Upon these facts, the defendant contended, that as the original debt was due to Ryan's estate, and he having paid it to Hoyt, the legal representative of Ryan, it should be deemed a valid payment of the debt. But the court ruled otherwise, unless it appeared that Nason and Edmund assented to the same being paid to Hoyt. This being in favor of the plaintiff, he of course does not object; and as the defendant prevailed in the cause on another point, if that other point was correctly ruled, it is immaterial as to this. The county court then decided that if the defendant could show that Nason and Edmund assented to the payment to Hoyt, either before or after such payment, it would be valid.

The defendant then produced evidence showing that Nason, by his attorney, made out the account of his administration, and presented it to the judge of probate for allowance, claiming the amount of the debt in question as a credit, and that Nason called several times at the probate office to attend to the examination and adjustment of said account: Whereupon, the court charged the jury, that Nason's account, made in manner stated, and for the purpose of having the same allowed in the probate office, and recognized by him generally as made by his authority, was *prima facie* evidence that Nason, when said account was filed in the probate office, assented to Hoyt's taking his pay upon and discharging said note; and if he did so at that time, and claimed a credit therefor, the defendant was entitled to recover; and that the fact was for them to decide. Edmund having deceased, and Nason being the only surviving executor, there can be no question but what his assent before would give Hoyt authority to receive and discharge; and that his assent after would ratify the payment; so that the real question is, whether in point of law, the jury might have been permitted to infer the assent from the facts proved. And in deciding this, it is to be considered that the debt against Potter was due to the estate of Ryan; and Nason having been superceded, Hoyt took his place as the legal representative of the estate, and

FRANKLIN,
January,
1834.

Nason
vs.
Potter.

the creditors or heirs, as the case may be, may now look to Hoyt, the present administrator, for the avails of the estate, so far as it has come to his hands. And as nothing appears in the case, that Nason, while he administered, made advances for the estate beyond his receipts, it would be unnatural to presume he did; and if he did not, the debt of Potter might as well have gone as it did in the first instance to Hoyt, as to have gone through Nason to Hoyt. For although the origin of the Potter debt was a debt of Ryan against House, which was paid by land which was sold for the note, and if in strictness the first debt or the land was to be considered as administered upon, so as to make Nason liable for the amount, yet it would by no means follow that the judge of probate, in the final settlement of the administration, which it seems is not yet done, would hold the old administrators to their accountability, when the money was really in the hands of the new.

Would it not be probable then, that Nason might consent to Hoyt's recovering the debt? And what could he or his agent or his attorney who acted for him mean, by insisting and claiming a credit for this very debt, but to authorize or acquiesce in such payment then made or to be made to Hoyt? For on no other ground could he have a right to such allowance. It seems the account has not been definitely acted upon; and no reason appears why this item will not be allowed the plaintiff. If Hoyt and his bail were insolvent, that might make the probate court hesitate as to the allowance. But if Hoyt is the sounder man of the the two, it would be favorable to Ryan's estate, and to justice, that it should be so allowed, and Hoyt consequently charged therewith.

In the absence of any explanatory proof on this point by the plaintiff, the charge of the court was correct.

The judgment of the county court is affirmed.